J-S05041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAISHA LESETTE SANTIAGO | : | |
| | : | |
| Appellant | : | No. 1043 WDA 2023 |

Appeal from the PCRA Order Entered August 7, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002661-2017

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: March 21, 2024**

Appellant, Taisha Lesette Santiago, appeals from the post-conviction court's August 7, 2023 order denying her timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541-9546.  On appeal, Appellant contends that the Commonwealth violated **Brady v. Maryland**, 373 US 83 (1963), by failing to disclose a favorable plea deal it allegedly made with Appellant's co-defendant, Lashonta Dade.  After careful review, we affirm.

The facts underlying Appellant's convictions were summarized by this Court on direct appeal, as follows:

On June 29, 2017, [Appellant], and two co-defendants, Jalen Reynolds and Lashon[t]a Dade, conspired to rob two individuals, David Tate and Rashaad Jones.  [Appellant] set up a meeting with the victims, Tate and Jones, ostensibly to arrange a sexual encounter between [Appellant], the two victims[,] and a female. [Appellant] arranged for Tate and Jones to pick her up at her house with the plan of taking her and a female back to Jones' residence at 1341/1343 East 20th Street, Erie, Pennsylvania.

In the meantime, co-defendant Dade, with co-defendant Reynolds as a passenger, drove to Jones' residence, parked outside[,] and waited for [Appellant's] instructions via cell phone. Tate and Jones exited Jones' residence and drove away to pick up [Appellant]. After Tate and Jones left, Reynolds received a communication from [Appellant], exited Dade's parked vehicle[,] and stationed himself outside Jones' residence. Dade remained inside the vehicle. Another assailant, David Dalton, arrived and positioned himself on Jones' front porch.

Shortly thereafter, Tate and Jones returned to Jones' residence with [Appellant] and exited Jones' vehicle. Jones walked up to his front porch where he encountered Dalton. A struggle between Jones and Dalton ensued. Reynolds, who was waiting outside the residence, shot and killed Tate on the sidewalk. Jones was shot multiple times. Though Jones survived, he underwent multiple surgeries from the incident and remains symptomatic from his injuries.

After a five-day jury trial in June 2018, [Appellant] was found guilty of criminal homicide/murder in the second degree, criminal conspiracy/robbery (felony, first degree), and two counts of [recklessly endangering another person]. [Appellant's] liability for second-degree-murder was based on her conviction for conspiracy to commit robbery.[]

**Commonwealth v. Santiago**, No. 636 WDA 2020, unpublished memorandum at *1-2 (Pa. Super. filed June 14, 2021) (citation to the record omitted).

On August 9, 2018, the trial court sentenced Appellant to life imprisonment, without the possibility of parole, followed by five to ten years' imprisonment and two years' probation. This Court affirmed her judgment of sentence on June 14, 2021, **see id.**, and she did not file a petition for permission to appeal to our Supreme Court. Thus, her judgment of sentence became final on July 14, 2021.

On July 14, 2022, Appellant filed a timely, counseled PCRA petition. Therein, she presented the following:

26. By way of background, this case involved three defendants, [Appellant], Jalen Reynolds, and Lashonta Dade.

27. The three defendants were accused of conspiring to rob two individuals, David Tate and Rashaad Jones[,] on or about June 29th, 2017.

28. On the day of the robbery, Jalen Reynolds shot both Mr. Tate and Mr. Jones. Mr. Tate succumbed to his injuries but Mr. Jones survived.

29. All three defendants, including [Appellant] and Lashonta Dade, were charged with criminal homicide as well as other offenses.

30. According to the Bill of Information for Ms. Dade, she was originally charged with criminal homicide and criminal conspiracy to commit a robbery.

31. Ms. Dade was given a deal where she plead [*sic*] guilty to only Conspiracy – Robbery Inflict Serious Bodily Injury and was sentenced to eleven and a half (11.5) to twenty-three (23) month[s] of confinement followed by five (5) years['] probation. Ms. Dade was released on parole a month after her sentencing.

32. [Appellant] was not made aware of this deal and in fact was lead [*sic*] to believe there was no deal between Ms. Dade and the prosecution given Ms. Dade's prior testimony.

33. At [Appellant's] Preliminary Hearing, Ms. Dade testified for the Commonwealth and the following exchange took place on direct:

Q: And has anyone promised you anything for your testimony here today?

A: No ma'am. I'm sitting here facing the same charges as them.

Q: And you don't know what's going to happen?

A: Exactly.

N.T. … Preliminary Hearing[, 8/29/17, at] 33; lines 12-17.

- 3 -

34. The Commonwealth had a duty to disclose favorable evidence to [Appellant] and her counsel prior to trial. ***Brady***…, 373 U.S. 83….

36. This includes evidence that can be used to impeach the Commonwealth's witnesses. ***Commonwealth v. Lesko***, 15 A.3d 345, 370 (Pa. 2011).

37. To establish a ***Brady*** violation, petitioner must prove three elements: (1) [t]he evidence was favorable to the accused, either because it is exculpatory or because it impeaches; (2) [t]he evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. ***Commonwealth v. Lambert***, … 884 A.2d 848, 854 ([Pa.] 2005).

38. It is clear this evidence would have been favorable to [Appellant] because the Commonwealth's case was largely built on the credibility of the testifying codefendant, Ms. Dade. There is evidence the prosecution suppressed this deal as [Appellant] cannot find it in the discovery and Ms. Dade's testimony at the Preliminary Hearing leads one to believe there was no deal in place to begin with, not even an open plea. Finally, prejudice ensued as it resulted in [Appellant's] being convicted and sentenced to [l]ife without [p]arole.

PCRA Petition, 7/14/22, at 6-8 (unnumbered).

On July 17, 2023, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. Appellant did not respond, and on August 7, 2023, the court issued an order dismissing her petition. Appellant filed a timely notice of appeal. On September 6, 2023, the court ordered her to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days, warning her that her issues would be waived if she did not comply. Appellant's Rule 1925(b) statement was not filed until October 3, 2023. Thus, her statement was untimely.

However, the PCRA court fully addressed the issues Appellant raises herein in its Rule 907 notice, and indicates in its Rule 1925(a) opinion that it

is relying on its rationale in the Rule 907 notice to support its dismissal of Appellant's petition. *See* PCRA Court Opinion, 10/5/23, at 3. Therefore, we will address Appellant's issues herein. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (holding that where an appellant files an untimely Rule 1925(b) statement, "this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal"). Appellant raises two issues for our review:

> 1. Did the court err and abuse its discretion by [not] finding that … the Commonwealth failed to disclose favorable evidence to Appellant at trial[?]
>
> 2. Did the court err and abuse its discretion by failing to grant an evidentiary hearing when there was a genuine issue of material fact?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant combines her two claims into the following, single issue in the Argument section of her brief: "The court erred in dismissing Appellant's PCRA petition without a holding an evidentiary hearing on the *Brady* claim as there were several controverted, previously unresolved factual issues material to Appellant's conviction that were still undetermined." *Id.* at 10. Accordingly, we will also address her claims together, applying the following standard of review:

> "In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Johnson*, … 966 A.2d 523, 532 ([Pa.] 2009). We pay great deference to the

findings of the PCRA court, "but its legal determinations are subject to our plenary review." *Id.*

*Commonwealth v. Matias*, 63 A.3d 807, 810 (Pa. Super. 2013)

Here, Appellant contends that the PCRA court erred by finding that no *Brady* violation occurred, where the record ostensibly demonstrates that the Commonwealth made a deal with Dade in exchange for her testimony, and did not inform Appellant about this deal. Appellant stresses that, although Dade "testified that she received no deal for testifying," she "ended up receiving a significantly different outcome in the charges against her, including only pleading guilty to [c]riminal [c]onspiracy and [r]obbery and receiving significantly less of a sentence." Appellant's Brief at 13. Appellant elaborates that,

> [a]t Dade's guilty plea and sentencing, the District Attorney requested that the court *nolle pros* the murder charge against Dade and sentence Dade to the minimum sentence allowed under law for the criminal conspiracy [to commit] robbery charge[,] citing Dade's cooperation in testifying against Appellant and that without Dade's testimony[,] there may not have been "any arrests without Ms. Dade[,]" let alone any convictions. (Notes of Testimony August 8, 2018 at pp 9, 16, 18-19.) Dade was ultimately sentenced to eleven and half (11½) to twenty-three months['] (23) incarceration with five (5) years of probation to run consecutively. Dade was also granted time served in the amount of twelve and a half (12½) months.

*Id.* (unnecessary capitalization omitted).

Appellant insists that these

> facts … strongly indicate that Dade's testimony was in exchange for what she believed would be a beneficial outcome to her and that understanding was material information that Appellant's jury should have been informed of when weighing Dade's credibility. The fact that there was no binding agreement but rather a

- 6 -

contingency depending upon the Commonwealth's satisfaction with her testimony at trial, only reinforces Dade's motive to testify favorable for the Commonwealth. If the Commonwealth had disclosed this evidence to Appellant, Appellant would have been able to impeach Dade at trial, and without such evidence Appellant was prejudiced as the jury was not able to accurately determine [] Dade's credibility. The failure to disclose this information to Appellant at trial undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place because[, i]f Appellant had this evidence at trial, there is a reasonable probability that the outcome of Appellant's trial would have been different.

*Id.* at 13-14. Accordingly, Appellant insists that *Brady* was violated and a new trial is warranted.

No relief is due. Initially, Appellant has failed to demonstrate that she could not have raised her *Brady* claim before the trial court or on direct appeal, thereby waiving it for our review. *See* 42 Pa.C.S. § 9543(a)(3) (stating that, to be eligible for PCRA relief, the petitioner must prove "[t]hat the allegation of error has not been previously litigated or waived"); 42 Pa.C.S. § 9544(b) (declaring that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"). Appellant's *Brady* claim is premised on comments by the Commonwealth at Dade's sentencing proceeding, the sentence Dade ultimately received, and her denial that any deal existed in her 2017 preliminary hearing testimony. Clearly, Appellant was aware of Dade's preliminary hearing testimony in 2017. Additionally, Dade's public, criminal record reveals that she pled guilty and was sentenced on August 9, 2018, the same day that Appellant was sentenced. Appellant

does not explain why she could not have discovered Dade's sentence, and the remarks by the Commonwealth at the sentencing proceeding, shortly after Dade's 2018 sentence was imposed, and raised her ***Brady*** claim premised on those facts earlier. In other words, Appellant has not demonstrated that she could not have raised her ***Brady*** claim before the trial court in a post-sentence motion, or before this Court on direct appeal. ***See Commonwealth v. Cousar***, 154 A.3d 287, 301–02 (Pa. 2017) ("***Brady*** claims … may be subject to waiver.") (citing ***Commonwealth v. Roney***, 79 A.3d 595, 609–12 (finding several ***Brady*** claims deemed waived on PCRA appeal for failure to raise them at trial or on direct appeal); ***Commonwealth v. Treiber***, 121 A.3d 435, 460–61 (Pa. 2015) (finding a ***Brady*** claim waived because it could have been raised in an earlier proceeding)).[1]

In any event, even if not waived, we would conclude that Appellant's ***Brady*** claim is meritless. To begin, we recognize that,

> [w]here evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred. ***See Brady***, 373 U.S. at 87…. The ***Brady*** rule has been extended to require the prosecution to disclose exculpatory information material to the guilt or punishment of an accused even in the absence of a specific

---

[1] Indeed, Appellant seemingly acknowledged in her PCRA petition that her ***Brady*** claim could have been raised on direct appeal, stating that she "should be granted relief for this ***Brady*** violation, or in the alternative, should be given relief due to ***appellate counsel's ineffectiveness in failing to bring this issue up in their Superior Court Appeal***." PCRA Petition, 7/14/22, at unnumbered 8 ¶ 39 (unnumbered; emphasis added). Appellant does not raise on appeal her cursory claim of appellate counsel's ineffectiveness, thereby waiving it.

request. *See United States v. Agurs*, 427 U.S. 97, 107 … (1976)…. Exculpatory evidence also includes evidence of an impeachment nature that is material to the case against the accused. *See Napue v. Illinois*, 360 U.S. 264, 269 … (1959). Any implication, promise or understanding that the government would extend leniency in exchange for a witness's testimony is relevant to the witness's credibility. *See Giglio v. United States*, 405 U.S. 150, 154 … (1972). When the failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted. *See United States v. Bagley*, 473 U.S. 667 … (1985). Impeachment evidence is material, and thus subject to obligatory disclosure, if there is a reasonable probability that had it been disclosed the outcome of the proceedings would have been different. *See Bagley*, 473 U.S. at 678….

*Commonwealth v. Burkhardt*, 833 A.2d 233, 241 (Pa. Super. 2003) (some internal citations omitted).

Instantly, we disagree with Appellant that her case mirrors *Commonwealth v. Strong*, 761 A.2d 1167 (Pa. 2000). There, Strong's accomplice in a murder, James Alexander, had engaged in plea discussions via letters written between his counsel and the Commonwealth. *See id.* at 1170. The letters detailing Alexander's plea negotiations had not been revealed to Strong prior to his trial, despite Strong requesting any evidence pertaining to an agreement between Alexander and the Commonwealth. *Id.* Ultimately, Alexander was the only eyewitness at Strong's trial who was able to testify that Strong was the person who had shot and killed the victim. *See id.* Additionally, while on the stand, Alexander denied that his testimony against Strong was in exchange for any favorable treatment, although he too

faced charges of kidnapping and murder. *Id.* Ultimately, Strong was convicted of first-degree murder and sentenced to death. *Id.*

Strong subsequently filed a PCRA petition, and when he requested copies of all relevant documents in the prosecution's file, the plea-negotiation letters between Alexander and the Commonwealth were finally turned over. *Id.* At a PCRA hearing, those letters were admitted into evidence to support Strong's claim that the Commonwealth had violated *Brady* by not revealing this information prior to trial. *Id.* Although the PCRA court denied relief, concluding that no actual deal had been struck between Alexander and the Commonwealth, *id.*, our Supreme Court reversed on appeal. In doing so, the

Court focused on circumstantial evidence in finding an understanding between Alexander and the Commonwealth. After concurring in the trial court's assessment that Alexander's testimony denying the existence of an agreement lacked credibility, *see Strong*, 761 A.2d at 1174, the Court went on to state:

Even if we disregard Alexander's testimony at the evidentiary hearing, sufficient circumstantial evidence of an understanding between Alexander and the Commonwealth regarding Alexander's testimony at [Strong's] trial exists. Alexander and [Strong] had each been indicted on charges of murder, kidnapping and conspiracy. The Commonwealth did not seek a joint trial of the alleged co[-]conspirators, and in fact dropped the conspiracy charge against Alexander prior to [Strong's] trial. The Commonwealth, as the letters revealed, had offered Alexander a sentence of two years on the charges of murder and kidnapping, pending information on his prior record. [Alexander's counsel], upon receipt of the prior record information, indicated a willingness to have Alexander plead guilty in exchange for a sentence of 36 months, rather than 24 months. Ultimately, Alexander pled guilty and received a sentence of 40 months. Unlike the trial court, we do not find this additional 4 months to be a

- 10 -

> critical departure from the understanding that the parties had been discussing prior to [Strong's] trial. The fact that the trial prosecutor was unaware of the negotiations between his superior and counsel for Alexander is irrelevant. As the United States Supreme Court has repeated time and again, the good faith or the bad faith of the individual prosecutor is irrelevant in determining whether or not the accused has been afforded a fair trial. Accordingly, we find the record establishes the existence of an understanding between the Commonwealth and Alexander that he would be treated with considerable leniency in exchange for his testimony against [Strong]. This understanding although not articulated in an ironclad agreement, was sufficient to implicate the due process protections of **Brady**.

> **Strong**, 761 A.2d at 1174 (citation omitted). The letters that the Supreme Court evaluated in reaching its decision were between Alexander's defense counsel, the District Attorney for Luzerne County and the Pennsylvania State Trooper in charge of the investigation of the victim's murder. All of the letters pre-dated the dates of Strong's murder trial and dealt either with a potential plea agreement or the conditions under which Alexander was incarcerated prior to trial. **See id.** at 1172.

**Burkhardt**, 833 A.2d at 241–42.

The instant case is easily distinguishable from **Strong**. As the PCRA court stressed, Appellant

> proffers no evidence whatsoever [that] the Commonwealth had, in fact, made promises to, or had any deals with Dade at the time of trial. Rather, [Appellant] merely surmises as much based on the fact that Dade received a more lenient sentence to a lesser charge within a short time after she testified against [Appellant]. This alone is insufficient to prove a **Brady** violation.

PCRA Rule 907 Notice, 7/17/23, at 8 (citing **Commonwealth v. Tielsch**, 934 A.2d 81, 88 (Pa. Super. 2007) (holding that the mere allegation that the district attorney had promised to assist in efforts to gain a reduction in the witness' federal sentence is not sufficient to establish that such an agreement

- 11 -

actually existed, either before or at the time of trial); ***Commonwealth v. Champney***, 832 A.2d 403, 412 (Pa. 2003) (holding that the mere assumption that something such as a promise to assist in reducing a witness' federal sentence must have been made is not sufficient to establish that such an agreement in fact existed); ***Commonwealth v. Morales***, 701 A.2d 516, 522-23 (Pa. 1997) (declining to find a ***Brady*** violation based on an alleged plea deal with a witness where the appellant offered nothing more than mere conjecture that such an agreement existed)).

We agree with the PCRA court. Unlike in ***Strong***, here, Appellant admitted in her PCRA petition that she could not find ***any evidence*** of a plea deal or negotiations between the Commonwealth and Dade in the discovery she had received. ***See*** PCRA Petition at 8 (unnumbered). Thus, the evidence and circumstances that the ***Strong*** Court focused on in finding an implied plea agreement existed between Alexander and the Commonwealth are not present in the instant case. Accordingly, because Appellant's ***Brady*** claim is waived and/or meritless in the alternative, we discern no error in the PCRA court's dismissal of Appellant's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/21/2024